# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERRIGO COMPANY, | No. 1:17-CV-1778 |
| Plaintiff | (Judge Brann)[1] |
| v. | |
| INTERNATIONAL VITAMIN CORPORATION and IVP, LLC, | |
| Defendants. | |

## MEMORANDUM OPINION

### SEPTEMBER 7, 2018

## I.  BACKGROUND

On December 8, 2017, Plaintiff, Perrigo Company, hereinafter "Perrigo," filed a complaint, and subsequently an amended, three-count complaint, on March 15, 2018,[2] against Defendants, International Vitamin Corporation and IVP, LLC, hereinafter collectively "IVC."  Thereafter, on April 6, 2018, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] The motion is a partial motion to dismiss Count Two only.[4]  The

---

[1]  An Article III Judge in the Middle District of Pennsylvania sitting by designation in the District of Delaware in lieu of the then vacant judgeships in that District.

[2]  ECF No. 6.

[3]  ECF No. 9.

[4]  ECF No. 9 at 2.

matter has now been fully briefed.  For the reasons that follow, the motion will be denied and Defendants ordered to file an answer to the amended complaint.

## II. DISCUSSION

### A. Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[5] a court assumes the truth of all factual allegations in a plaintiff's complaint and draws all inferences in favor of that party;[6] the Court does not, however, assume the truth of any of the complaint's legal conclusions.[7]  If a complaint's factual allegations, so treated, state a claim that is plausible – *i.e.*, if they allow the court to infer the Defendant's liability – the motion is denied; if they fail to do so, the motion is granted.[8]

### B. Facts Alleged in the Amended Complaint[9]

The facts alleged in the amended complaint, which I must accept as true for the purposes of this motion, are as follows.  Perrigo is "one of the world's leading manufacturers of over-the-counter pharmaceutical products."[10]  IVP is a wholly-

---

[5]   Federal Rule of Civil Procedure 12(b)(6).

[6]   *Phillips v. Cnty. Of Allegheny*, 616 F.3d 224, 228 (3rd Cir. 2008).

[7]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  See also *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[8]   *Id.*

[9]   Because this is a partial motion to dismiss, I only refer to the facts as they relate to Count Two.

[10]  Amended Complaint, ECF No. 6 at ¶ 1.

owned subsidiary of International Vitamin Corporation.[11]  Perrigo and IVC entered into an Asset Purchase Agreement (hereinafter either "Asset Purchase Agreement" or "the contract") for the sale of Perrigo's vitamins, minerals, and supplements business (hereinafter the "Business") to IVC.[12]  The sale closed on August 5, 2016.[13]

"At the time of sale, the Business had several preexisting and potential liabilities, most of which were assumed by the buyer but a handful of which were retained by the seller."[14]  "On or after the closing date of the sale, Defendants terminated several employees of the Business."[15]  "Pursuant to the Asset Purchase Agreement, Perrigo made severance payments to those employees."[16]  "The payments to each employee amounted to twelve weeks of salary, plus one week of salary for each year the employee worked for Perrigo."[17]  "To date, Defendants have refused to reimburse Perrigo for the full amount of its severance payments."[18]

---

[11] *Id.* at ¶ 2-3.
[12] *Id.* at ¶ 6.
[13] *Id.*
[14] *Id.* at ¶ 8.
[15] *Id.* at ¶ 21.
[16] *Id.* at ¶ 22.
[17] *Id.*
[18] *Id.* at ¶ 23.

Count Two of the Amended Complaint is for Breach of Contract.[19] Perrigo alleges that "Defendants breached the Asset Purchase Agreement by refusing to reimburse Perrigo for the full employee severance payments the parties agreed to in the Asset Purchase Agreement."[20] "Defendants' refusal to reimburse Perrigo for employee severance at the agreed-upon rate has caused Perrigo to suffer damages in the amount of $1,190,877.52."[21]

**C.  Analysis**

The dispute as to Count Two of the amended complaint relates to certain contractual clauses found in the Asset Purchase Agreement, and specifically the payment obligations to "Terminated Business Employees." Perrigo did not attach the contract to the amended complaint. IVC, however, did attach it to its filings. "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[22] Typically, to consider materials outside the complaint, it must be converted to a motion for summary judgment.[23] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[24]

---

[19] *Id.* at 6.

[20] *Id.* at ¶ 30.

[21] *Id.* at ¶ 31.

[22] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[23] *See id.* and Fed. R. Civ. P. 12(d).

[24] *Faulkner,* 463 F.3d at 134.

In sum, it is permissible to consider full text of documents partially quoted in complaint.[25] It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[26] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[27] "For example, even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[28] It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[29]

Here, I find that these conditions have been met, as to at least certain of Defendants' attachments. Specifically, the Asset Purchase Agreement itself is integral to the complaint, and I will consider it. However, I have not considered the attached 'Declaration of Michael Yoder,' as that affidavit is outside the complaint and is foreclosed from my consideration on a Rule 12(b)(6) motion.

The relevant clauses of the Asset Purchase Agreement are set forth below in their entirety.

---

[25] *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996).

[26] *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

[27] *Faulkner*, 463 F.3d at 134.

[28] *Id, See also e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).

[29] *Faulkner*, 463 F.3d at 134.

**Section 8.1 Designated Employees; Excluded Employees; Transitional Employees.** At or before the Closing, Seller shall (a) terminate the employment of all Business Employees, except those Business Employees identified on Schedule 8.1(a) (collectively, the "Excluded Employees") and those Business Employees identified on Schedule 8.1(b) (collectively, the "Transitional Employees"), (such Business Employees terminated in connection with this Section 8.1, collectively, the "Designated Employees"), and (b) pay all amounts due to the Designated Employees by way of salaries, bonuses, incentives, commissions or, with respect to any Designated Employee that is a Terminated Business Employee, sick leave, paid time off, vacation days or holidays or, subject to Section 8.4, any severance or termination payments that accrued prior to the Closing Date or become payable as a result of the transactions contemplated by this Agreement and/or the Ancillary Agreements. For so long as a Designated Employee is employed by Buyer or any of its Affiliates, the Seller Entities shall not enforce against such Designated Employee any confidentiality, non-compete or non-solicit obligations, or otherwise assert with respect to such Designated Employee or Buyer or any of its Affiliates claims, in each case, that would prohibit or place conditions on such Designated Employee's acceptance of an offer of employment by Buyer or any of its Affiliates, such Designated Employee's employment by Buyer or any of its Affiliates in the Business, or any actions related to the Business taken by such Designated Employee as an employee of the Buyer or any of its Affiliates. For the removal of doubt, the Seller Entities shall not be required to terminate the employment of any Excluded Employee or Transitional Employee, and all such Excluded Employees and Transitional Employees shall remain employed by the Seller Entities or any of its Affiliates. Buyer will hire enough Designated Employees so Seller Entities have no obligations or Liabilities under the WARN Act or similar Law. Notwithstanding the foregoing, for those Business Employees identified on Schedule 8.1(c), Buyer shall notify Seller within ten (10) Business Days of the date hereof whether such Business Employees shall be Excluded Employees or Designated Employees.[30]

---

[30] ECF No. 10-1 at 48-49.

**Section 8.2 Continuation of Base Compensation.** At the Closing, Buyer or one of its Affiliates shall offer employment at will at the same base compensation in effect immediately prior to the Closing Date to all Designated Employees on the terms set forth in this Article 8. Each Designated Employee who accepts Buyer's offer of employment pursuant to this Section shall be referred to herein as a "Transferred Business Employee." For each Transferred Business Employee, Buyer shall maintain for a period of at least 12 months following the Closing Date (or until any earlier termination of employment) the same base compensation in effect for such Transferred Business Employee immediately prior to the Closing. As of and after Closing, Buyer will provide to each Transferred Business Employee full credit for purposes of eligibility to participate, level of severance and other benefits and vesting (but not for purposes of benefit accrual or any purpose under any retiree welfare plan) under any employee benefit plan, policy or arrangement of Buyer or any of its Affiliates for such Transferred Business Employee's service prior to the Closing with any Seller Entity, to the same extent such service is recognized by such Seller Entity immediately prior to Closing, except as such credit would result in a duplication of benefits. For the avoidance of doubt, Buyer or its Affiliate shall not be obligated to employ any Transferred Business Employee for any particular period of time.[31]

*****

**Section 8.4 Severance.**

(a) In the event that a Business Employee does not, for any reason, continue employment with Buyer or its Affiliates at or immediately after the Closing (the "Terminated Business Employees"), which results in any obligation, contingent or otherwise, of Seller or any of its Affiliates to pay any severance or other benefits (including such benefits required under applicable Laws) to any Terminated Business Employees or any additional Liability incurred by Seller and its Affiliates in connection therewith, Seller shall remain solely responsible for the payment and performance of all such severance and other benefits and Liabilities; provided, however, that Buyer shall, and shall cause its Affiliates to, reimburse Seller and its Affiliates

---

[31] ECF No. 10-1 at 49.

(including the other Seller Entities) an amount equal to the severance that would have been due to such Terminated Business Employees under the terms set forth on Schedule 8.4 as if such Terminated Business Employees were employed by Buyer and involuntarily terminated without cause by Buyer, taking into account and combining such Terminated Business Employees' service with Seller and its Affiliates prior to the Closing. Notwithstanding the foregoing, neither Buyer nor any of its Affiliates shall be obligated to reimburse Seller for any severance paid to any Terminated Business Employee who receives an employment offer from Buyer or any of its Affiliates for a Comparable Position, as such term is defined in Perrigo Company's U.S. Severance Policy amended and restated effective November 12, 2015; provided that Perrigo Company PLC will not claim that a Terminated Business Employee is entitled to severance because Buyer or any of its Affiliates did not offer the Terminated Business Employee equity incentive compensation so long as there is not a material diminution in the aggregate amount of such Terminated Business Employee's total annual compensation (base salary plus total target incentive compensation) in relation to the aggregate amount of such Terminated Business Employee's total annual compensation in effect immediately prior to the Closing Date.

(b) In the event Buyer does not offer a Transferred Business Employee a Comparable Position (as defined in the Perrigo Severance Plan) which results in any obligation, contingent or otherwise, of Seller or any of its Affiliates to pay any severance or other benefits to such Transferred Business Employee under the Perrigo Severance Plan, Seller shall remain solely responsible for the payment and performance of all such severance and other benefits and Liabilities; provided, however, Buyer shall, and shall cause its Affiliates to, reimburse Seller and its Affiliates (including the other Seller Entities) an amount equal to the severance that would have been due to such Transferred Business Employee under the terms set forth on Schedule 8.4 if such Transferred Business Employee's employment was terminated involuntarily without cause by Buyer, taking into account and combining such Transferred Business Employee's service with Seller and its Affiliates prior to the Closing.

(c) With respect to each Transferred Business Employee whose employment is terminated involuntarily without cause during the

period commencing on the Effective Time and ending 12 months after the Closing Date (the "Severance Period"), Buyer shall provide such Transferred Business Employee with severance benefits in accordance with the terms set forth on Schedule 8.4, taking into account and combining such Transferred Business Employee's service with Seller and its Affiliates prior to the Closing and with Buyer and its Affiliates on and after the Closing.[32]

*****

**Section 8.7 Transitional Employees.** Effective as of the Closing Date, Seller shall continue to employ the Transitional Employees until the earlier of (a) such time as Buyer or any of its Affiliates shall specify or (b) nine (9) months in the case of Bill Austin or 180 days from the Closing Date in the case of all other Transitional Employees (the "Transitional Employee Termination Date"); provided, however, Seller is not required to continue to employ Transitional Employees who terminate their employment voluntarily or are terminated by Seller for cause. Buyer or any of its Affiliates shall notify Seller of such date in writing at least fifteen (15) days prior to the Transitional Employee Termination Date. For the avoidance of doubt, Buyer or any of its Affiliates may specify a different Transitional Employee Termination Date for each Transitional Employee. From the Closing until the Transitional Employee Termination Date, Buyer shall reimburse Seller for the reasonable costs to employ each Transitional Employee (including, without limitation, base compensation, the costs for such employee's participation in the Benefit Plans set forth on Schedule 4.16 and all related employer taxes (such costs, collectively, the "Reimbursable Expenses"). From the Closing until the applicable Transitional Employee Termination Date, Seller (1) shall not increase the base compensation or incentive opportunity of any Transitional Employee, and shall not grant any new equity incentive awards to any Transitional Employee, and (2) shall not make any changes to the Benefit Plans covering such Transitional Employees that do not also apply to other similarly situated employees of Seller. Upon the occurrence of the Transitional Employee Termination Date, unless Seller elects to continue the employment of any Transitional

---

[32] ECF No. 10-1 at 49-50.

Employee, Buyer shall reimburse Seller an amount equal to the severance that would have been due to such Transitional Employee under the terms set forth on Schedule 8.4 if such Transitional Employee's employment was terminated involuntarily without cause by Buyer, taking into account and combining such Transitional Employee's service with Seller and its Affiliates prior to the Transitional Employee Termination Date.[33]

The Asset Purchase Agreement provides that Delaware law shall apply to any dispute.[34] "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[35] "We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."[36] "We will not read a contract to render a provision or term 'meaningless or illusory.'"[37] When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions."[38] "On the contrary, when we may reasonably ascribe multiple and different interpretations to a contract, we will find that the contract is ambiguous."[39] "An unreasonable

---

[33] ECF No. 10-1 at 50.

[34] "This Agreement shall be governed by and construed in accordance with the Laws of the State of Delaware…" ECF No. 10-1 at 61.

[35] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (internal citations omitted).

[36] *Id.*

[37] *Id.*

[38] *Id.* at 1159-60.

[39] *Id.* at 1160.

interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract."[40] "If a contract is ambiguous, we will apply the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party."[41] "The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous."[42] "The determination of ambiguity lies within the sole province of the court."[43]

The Asset Purchase Agreement between the parties is hardly a model of clarity. It is dense, wordy, and opaque, as the clauses cited above reveal. As such, in following the law of Delaware to read the contract as a whole, the next paragraph contains the Court's distillation of the salient contract terms.

At or before the Closing, [Perrigo] shall [] terminate the employment of all Business Employees, except… "Excluded Employees" [] and …"Transitional Employees" …collectively, the "Designated Employees," and [] pay…with respect to any Designated Employee that is a Terminated Business Employee…any severance or termination payments that accrued prior to the Closing Date…[44] Each Designated Employee who accepts [IVC's] offer of employment pursuant to

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] Asset Purchase Agreement, Section 8.1, ECF No. 10-1 at 48.

this Section shall be referred to herein as a "Transferred Business Employee"…[45] In the event that a Business Employee does not, for any reason, continue employment with [IVC]…at or immediately after the Closing (the "Terminated Business Employees"), which results in any obligation…of [Perrigo]…to pay any severance…to any Terminated Business Employees…[Perrigo] shall remain solely responsible for the payment…of…severance…<u>provided however</u>[46] that [IVC] shall reimburse [Perrigo]…an amount equal to the severance that would have been due to [] Terminated Business Employees under the terms set forth on Schedule 8.4 as if [] Terminated Business Employees were employed by [IVC] and involuntarily terminated without cause by IVC …[47]

    Notwithstanding the foregoing, [] [IVC]…shall [not] be obligated to reimburse [Perrigo] for any severance paid to any Terminated Business Employee who receives an employment offer from [IVC]…for a Comparable Position…[48] In the event [IVC] does not offer a Transferred Business Employee a Comparable Position…[Perrigo] shall remain solely responsible for the payment and performance of all such severance…<u>provided, however</u>,[49] [IVC] shall…reimburse [Perrigo]…an amount equal to the severance that would have been due to such

---

[45] Asset Purchase Agreement, Section 8.2, ECF No. 10-1 at 49.
[46] Emphasis in original.
[47] Asset Purchase Agreement, Section 8.4(a), ECF No. 10-1 at 49.
[48] *Id.*
[49] Emphasis in original.

Transferred Business Employee under the terms set forth on Schedule 8.4 if such Transferred Business Employee's employment was terminated involuntarily without cause by [IVC], taking into account and combining such Transferred Business Employee's service with [Perrigo]…[50] With respect to each Transferred Business Employee whose employment is terminated involuntarily…during the period commencing on the Effective Time and ending 12 months after the Closing Date…[IVC] shall provide such Transferred Business Employee with severance benefits…[51] [Finally,] [IVC] shall reimburse [Perrigo] an amount equal to the severance that would have been due to such Transitional Employee under the terms set forth on Schedule 8.4 if such Transitional Employee's employment was terminated involuntarily without cause by [IVC].[52]

Once it is reduced to the clearest possible distillation of its terms, it is evident that the contract intended IVC to reimburse Perrigo for the severance payments made to Terminated Employees.

> In the event that a Business Employee does not, for any reason, continue employment with [IVC]…at or immediately after the Closing (the "Terminated Business Employees"), which results in any obligation…of [Perrigo]…to pay any severance…to any Terminated Business Employees…[Perrigo] shall remain solely responsible for the payment…of…severance…<u>provided however</u>[53] that [IVC] shall

---

[50] Asset Purchase Agreement, Section 8.4(b), ECF No. 10-1 at 50.

[51] Asset Purchase Agreement, Section 8.4(c), ECF No. 10-1 at 50.

[52] Asset Purchase Agreement, Section 8.7, ECF No. 10-1 at 51.

[53] Emphasis in original.

reimburse [Perrigo]…an amount equal to the severance that would have been due to [] Terminated Business Employees under the terms set forth on Schedule 8.4 as if [] Terminated Business Employees were employed by [IVC] and involuntarily terminated without cause by IVC …[54]

In essence, Perrigo was to pay severance to Terminated Employees and IVC was to reimburse Perrigo for that payment.

### III. CONCLUSION

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[54] Asset Purchase Agreement, Section 8.4(a), ECF No. 10-1 at 49.